\*\* E-filed September 17, 2009 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRYOTECH INTERNATIONAL, INC., a Delaware Corporation, fka VBS INDUSTRIES INCORPORATED,<br><br>    Plaintiff,<br>  v.<br><br>TECHNIFAB PRODUCTS, INC., an Indiana Corporation; and DOES 1–50 inclusive,<br><br>    Defendant.<br>_____/ | No. C08-02921 HRL<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br><br>**[Re: Docket No. 89]** |

Plaintiff Cryotech International, Inc. ("Cryotech") and defendant Technifab Products, Inc. ("Technifab") are competing companies in the cryogenic industry. They signed a contract where Technifab agreed to exclusively produce certain products that Cryotech agreed to exclusively purchase and sell. After Technifab terminated the agreement several years later, Cryotech sued Technifab for allegedly using Cryotech's confidential information to sell products directly to Cryotech's customers in violation of the agreement.

Technifab now moves for sanctions under the court's inherent powers against Cryotech's counsel for failing to provide prior notice of third-party subpoenas as required under the Federal Rules of Civil Procedure. Pursuant to Civil Local Rule 7-1(b), the court finds the matter suitable for determination without oral argument, and the September 22, 2009 hearing is vacated.

///

## LEGAL STANDARD

A court has the inherent power to award attorneys' fees as a sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 49 (1991). Yet a court doing so must make an explicit finding of bad faith to ensure that it exercises proper restraint when wielding this power. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). In the absence of bad faith, negligence or even recklessness will not justify sanctions under the court's inherent power. *See Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001). Simply put, the bad-faith requirement is a high threshold. *Mendez v. County of San Bernadino*, 540 F.2d 1109, 1132 (9th Cir. 2008).

## DISCUSSION

### A.  Plaintiff's Request to Strike Evidence

The court will first address Cryotech's request to strike statements in Technifab's declarations. Cryotech argues that the identified statements are hearsay, lack personal knowledge, and/or lack foundation. Nevertheless, the facts over which Cryotech objects are those it admits to in its own motion papers or those restated in other portions of defendant's declarations to which it did not object. Consequently, Cryotech's request to strike is DENIED.

### B.  Defendant's Request for Sanctions

In March and April 2009, Cryotech issued fifteen third-party subpoenas *duces tecum* without giving prior notice to defendant. Technifab says that it did not learn of Cryotech's actions until two of its subpoenaed customers contacted it on April 23, 2009. The parties agreed to discuss the subpoena issue during an already-scheduled, meet-and-confer telephone call on April 24. Technifab claims that during the call, plaintiff's counsel did not indicate that Cryotech had served more than two subpoenas, that some deadlines had passed, that some production had occurred, and that Cryotech intended to serve more subpoenas in the coming days. Technifab says that although plaintiff sent them electronic copies of the subpoenas by e-mail sometime after the call, its counsel was unable to review them until April 27 due to computer problems. (Hassler Decl. ¶ 5; Casey Decl. ¶ 7.) Upon review, they saw that the subpoenas did not mention this matter's protective order.

After the call, the parties exchanged e-mails concerning Technifab's objections to the subpoenas and a stipulation to extend the subpoenas' deadlines to May 7. After some scheduling

2

difficulties, they held a second meet-and-confer call on May 1.  Technifab says that despite these communications, on May 1, Cryotech notified the third parties of the extension on its own and then withdrew the subpoenas that same day even though it had said during the call that it would not do so without more detailed objections.  Technifab claims that these actions show an intent to improperly obtain documents and to disrupt Technifab's customer relationships.  It argues that this conduct was in bad faith and requests sanctions in the amount of $17,895.[1]

Cryotech counters that the service of subpoenas without prior notice was inadvertent.  It says that its counsel instructed a paralegal, Ms. Shoults, to provide notice but that she failed to do so before sending the subpoenas to a process server.  (Shoults. Decl. ¶¶ 3–7.)  Its counsel says they did not learn of the problem until Technifab contacted them on April 23 and admits that they failed to "adequately supervise" Ms. Shoults.  (Opp'n 7.)  However, they deny that they knowingly withheld information during the April 24 call, and note that they even sent Technifab copies of all fifteen subpoenas that same day and again over the next few days.  They also say that they contacted the third parties directly about the extension because they thought a stipulation was unlikely, and that they did not decide to withdraw the subpoenas until after the May 1 call.  (Johanson Decl. ¶ 25.)  They assert that that only six of the fifteen third parties produced documents, that one attorney briefly reviewed only one set of production, that Cryotech itself never saw any of the produced documents, and that they returned and destroyed all production after withdrawing the subpoenas.  Cryotech further claims that the reissued subpoenas addressed Technifab's concerns about scope and that Technifab did not object or file motions to quash.  It argues that monetary sanctions are therefore inappropriate.

The Federal Rules of Civil Procedure required Cryotech to provide prior notice before serving third-party subpoenas.[2]  Fed. R. Civ. P. 45(b)(1).  Whether this court should sanction Cryotech's counsel for failing to do so is a fact-specific determination.  Technifab argues that a case from the Western District of New York, in which the court found that the facts warranted sanctions, should control.  *See generally Murphy v. Bd. of Educ.*, 196 F.R.D. 220 (W.D.N.Y. 2000).

---

[1] This figure reflects Technifab's attorneys' fees for time spent from April 23 through May 1 as well as the time spent after Cryotech withdrew the subpoenas to bring this motion. (Reply Decls.)

[2] In its motion, Technifab cites to an old version of Rule 45. The rule was updated in 2007 to clarify that notice is required before service. Fed. R. Civ. P. 45 advisory committee notes, 2007 amend.

3

In *Murphy*, plaintiff's counsel sent a letter to opposing counsel suggesting that each side provide notice to the other when issuing third-party subpoenas. *Id.* at 223. But plaintiff's counsel had already issued several subpoenas without prior notice, and she issued even more after the letter. *Id.* The subpoenas sought one defendant's highly confidential personal information such as medical and substance abuse treatment records. *Id.* Two weeks later, she sent a second letter reminding opposing counsel of her proposal, but failed to mention the already-issued subpoenas and their related production. *Id.* at 223–24. Opposing counsel then moved to quash two of the subpoenas, but it did not learn of the other subpoenas until the motion hearing. *Id.* at 224.

*Murphy's* facts are distinguishable from the instant case. First, in *Murphy*, plaintiff's counsel argued that she did not have to provide prior notice. *Id.* at 225–26. In contrast, Cryotech's counsel does not dispute that notice was required and admits they failed to properly supervise the paralegal to whom they had delegated the task. Second, the *Murphy* court was particularly disturbed by the letter asking that the parties agree to a procedure that plaintiff's counsel was already violating, finding that "[i]t is hard to characterize th[e] letter as anything other than deceitful." *Id.* at 226. The court also found "incredible" her argument that the letter itself would have served as notice. *Id.* In this case, there is simply no comparable behavior.

Nonetheless, Technifab insists that opposing counsel's conduct was indicative of bad faith. It argues that Cryotech's counsel did not tell it about all fifteen subpoenas during the April 24 call in order to lull it into believing there were only two. Cryotech counters that Technifab did not ask how many there were during the call and that the conversation focused on substantive issues. In any event, Cryotech provided the defendant with copies of all fifteen subpoenas the same day and again in the following days, which belies an intent to deceive. Technifab further claims that Cryotech continued to serve subpoenas without notice after April 24. Ms. Shoults avers that she sent all fifteen subpoenas to the process server from March 28 to April 15. (Shoults Decl. ¶ 6.) Of the seven she sent on April 15, four were served by the process server from April 27 to April 30. (Opp'n 7.) However, these subpoenas were included in Cryotech's e-mails to Technifab, and Cryotech agreed to extend the deadline until May 7 to allow Technifab time to raise objections or bring motions to quash. Such actions do not comport with bad faith.

4

Still, Technifab points to other conduct it claims shows bad faith. First, it argues that Cryotech improperly failed to sign a stipulation to extend the production deadline. Without more, however, the mere failure to agree on stipulation language in a five-day period does not equate to bad faith, especially when Cryotech notified the third parties of the extension. Second, Technifab suggests that Cryotech's counsel purposely misled it in the May 1 meet-and-confer call because they did not say they intended to withdraw the subpoenas. But Cryotech's tactical decision to withdraw the subpoenas after the call—even if done because it realized that the original subpoenas were too broad and Technifab's objections were valid—does not support a finding of bad faith.

Technifab also argues that like in *Murphy*, Cryotech's subpoenas asked for "extremely sensitive information." (Reply 4.) Yet the records sought in *Murphy* raised different privacy concerns than those sought by Cryotech. *Murphy* involved personal medical records that require the patient's consent or a court order for production. *See, e.g.*, 42 C.F.R. §§ 2.1(a), 2.2(a) (2008) (requiring patient consent or a court order to disclose substance abuse treatment records). Furthermore, the *Murphy* subpoenas sought such records for a defendant who had not raised any medical issue as a defense. *Murphy*, 196 F.R.D. at 227–28.

In the instant case, Technifab claims that the subpoenas were overbroad and asked for confidential information and trade secrets. But this information—sought from customers that Cryotech alleges Technifab stole—is already subject to an enforceable protective order. (Docket No. 36.) Even more, Cryotech avers that the only production its counsel looked at was one that was already designated as "attorneys' eyes only" pursuant to the protective order. (Johanson Decl. ¶ 20; Rubel Decl. Ex. 1.) Its counsel further represents that they did not make available any of the documents to Cryotech itself. (Johanson Decl. ¶ 21.)

Finally, Technifab argues that sanctions are warranted because it had to spend money responding to problems not of its creation. Yet discovery disputes are an expected part of any litigation, and presumably Technifab would have raised the same substantive concerns even if it had received prior notice. Furthermore, "an inherent powers sanction is meant to do something very different than provide a substantive remedy to an aggrieved party. An inherent powers sanction is
///

meant to 'vindicat[e] judicial authority.' " *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)).

The facts as presented by both sides shows that Cryotech's failure to provide prior notice was not intentional and that its counsel took action to remedy the problem once they became aware of the issue. The parties do not dispute that several meet-and-confer efforts took place immediately after and in the week following Technifab's notification. Indeed, within one week of this notification, Cryotech's counsel gave Technifab copies of the subpoenas and produced documents, agreed to extend the deadline for production, and ultimately withdrew all fifteen subpoenas. Cryotech then reissued the subpoenas a few weeks later with proper notice and with modifications to address Technifab's substantive concerns. These are the types of actions one would expect parties to take to resolve discovery disputes without court intervention.

## CONCLUSION

Technifab argues that Cryotech's counsel's actions were in bad faith because their "lack of oversight" on Ms. Shoults was "inexcusable" and that they were "secretive" and had "stalled until production dates" passed. (Reply 2.) But in the Ninth Circuit, courts have declined to find bad faith even in situations where the conduct at issue was "totally frivolous," "outrageous," "inexcusable," and "appalling." *Mendez v. County of San Bernadino*, 540 F.2d 1109, 1132 (9th Cir. 2008) (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). Under the circumstances presented in this case, the court finds that any negligence on the part of Cryotech's counsel in supervising its paralegal did not rise to the level of bad faith, nor did their conduct from April 23 to May 1, 2009. Accordingly, Technifab's request for sanctions is DENIED.

**IT IS SO ORDERED.**

Dated: September 17, 2009

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6

1 **C 08-02921 Notice will be electronically mailed to:**

2  Arthur J. Casey             ajc@robinsonwood.com, kkn@robinsonwood.com
   David Richard Johanson      drj@esop-law.com, msshelli@esop-law.com
3  Douglas Andrew Rubel        dar@johansonberenson.com, msshelli@esop-law.com
   Mark Douglas Hassler        hassler@huntlawfirm.net
4  Michael A Pasahow           mpasahow@esop-law.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**