1   David R. Johanson (Bar No. 164141)
    JOHANSON BERENSON LLP
2   1776 Second Street
    Napa, California  94559
3   Telephone:  (707) 226-8997
    Facsimile:  (707) 581-1704
4   E-mail:  drj@esop-law.com

5   Douglas A. Rubel (*pro hac vice*)
    JOHANSON BERENSON LLP
6   201 Shannon Oaks Circle, Suite 200
    Cary, North Carolina  27511
7   Telephone:  (919) 654-4544
    Facsimile:  (919) 882-0906
8   Email:  dar@johansonberenson.com

9   Attorneys for Plaintiff
    CRYOTECH INTERNATIONAL, INC.

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14  CRYOTECH INTERNATIONAL, INC.,        CASE NO.  08-cv-02921 HRL
    a Delaware corporation, fka VBS
15  INDUSTRIES INCORPORATED
                                         **PLAINTIFF'S OPPOSITION TO**
16                  Plaintiff,           **DEFENDANT'S MOTION FOR PARTIAL**
                                         **SUMMARY JUDGMENT;**
17          vs.                          **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT;**
18                                       **DECLARATIONS IN SUPPORT**
    TECHNIFAB PRODUCTS, INC.,            **THEREOF; AND [PROPOSED] ORDER**
19  an Indiana corporation; and DOES 1-50,
    inclusive                            **DATE:  April 6, 2010**
20                                       **TIME:  10:00 am**
                    Defendants.          **COURTROOM:  2, Fifth Floor**
21                                       **JUDGE:  Magistrate Howard R. Lloyd**
                                         **COMPLAINT FILED:  June 12, 2008**
22

23           Plaintiff Cryotech International, Inc., a Delaware corporation formerly known as VBS

24  Industries, Incorporated ("Cryotech"), hereby submits its Opposition to the Motion for Partial

25  Summary Judgment of Defendant Technifab Products, Inc., an Indiana corporation ("Technifab").

26           For many reasons, Technifab's Motion should be denied.  First and foremost, there are

27  genuine disputes of material fact as to the formation, execution, and operation of the subject

28

                                              1

1   agreement between the Parties.  Technifab has failed to advise the Court of all of the facts

2   surrounding the subject agreement and misleads the Court into believing that the agreement was

3   executed when the parties met.  Substantial additional negotiations occurred in California after

4   the alleged "meeting" between the parties.

5        Second, Technifab misapplies the applicable law regarding choice of laws and, again, fails

6   to advise the Court of all material facts applicable thereto.  California has a greater interest in this

7   dispute than does Indiana.  Technifab's contacts with California were pervasive.  Among other

8   things, it negotiated and contracted with a California entity, in California; it provided over

9   ███████████████████████████████████████ during the

10  term of the Exclusive Manufacturing and Distributor Agreement, dated September 10, 2001 (the

11  "Agreement"); and it violated the Agreement in California, costing Cryotech to lose revenues in

12  excess of at least ████████████████████████████████████████

13  ██████████████████████████ Technifab not only could expect to

14  be haled into court here, but to have California law apply as well.

15       Third, Cryotech originally provided Technifab with the basis for its damages claims on

16  April 30, 2009, when it initially responded and objected to Technifab's Interrogatories and

17  thereafter supplemented its discovery responses, providing greater particularity.  Technifab's

18  contentions that Cryotech's executive officers could not testify as to damages at their depositions

19  are disingenuous:  Technifab's invoices and other sales data was designated "Highly Confidential

20  – Attorney's Eye's Only" under the Stipulated Protective Order in this case.  [Doc. No. 36.]

21  Cryotech's executive officers could not have known the extent of Technifab's violations and the

22  damages caused thereby without violating the Stipulated Protective Order.  Cryotech's counsel

23  couldn't fully address the damages without fully conducting discovery and consulting with a

24  cryogenic expert to determine the exact nature and extent of the damages.  Again, Technifab has

25  misled the Court.

26       For these reasons, this Court should deny Technifab's Motion.

27  ///

28  ///

1    In support of Cryotech's Opposition, it submits the accompanying Memorandum of Points

2 and Authorities, Declarations, and [proposed] Order.

3                                              Respectfully submitted,

4 DATED:  March 16, 2010                      JOHANSON BERENSON LLP

5

6                                     By:     /s/ David R. Johanson
                                              _____

7                                             David R. Johanson

8

9                                     By:     /s/ Douglas A. Rubel
                                              _____

10                                            Douglas A. Rubel

11                                            Attorneys for Cryotech International, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

I.      INTRODUCTION AND FACTS IN GENUINE DISPUTE ............................................. 1

II.     LEGAL DISCUSSION ................................................................................ 5

        A.  Technifab Constructs a False Dispute Concerning Choice of Laws ........................... 5

                1.  Technifab Misapplies The "Governmental Interest Test" ................................ 5

                        a.  The *Ledesma* and *Janzen* Cases are Distinguishable ..................................... 6

                2.  There Is No Substantive Difference Between California and Indiana Law ....... 7

                3.  According To Technifab, This Court Must Examine Each State's
                    Interest In Applying The Law To Determine If A "True Conflict" Exists;
                    However, Technifab Misleads The Court As To California's Interest In
                    Applying Its Own Law  ................................................................................. 11

                4.  Indiana's Interests Would Not Be Impaired If California Law Applied
                    To Counts II and IV; Cryotech's Request for Injunctive Relief And
                    Monetary Damages Not Against Either State's Interest .................................. 14

        B.  The Declaration of Douglas Short is Inadmissible Because it is
            Irrelevant, Lacks Foundation and is Hearsay under the
            Federal Rules of Evidence ............................................................................. 16

        C.  Cryotech's Damages ARE Specific or At Least Create a Genuine
            Issue of Material Fact Sufficient to Defeat Defendant's Motion ............................... 20

III.    CONCLUSION ....................................................................................... 21

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

__CASES__                                                                    __PAGE__

*Arno v. Club Med, Inc.*
  22 F.3d 1464, 1467, 1469 (9th Cir. 1994) ........................................5, 9, 12, 14, 15

*Buckaloo v. Johnson*
  14 Cal.3d 815, 823-827 (1975) ...................................................9, 12, 15, 16, 19

*Butts v. OCE-USA, Inc.*
  9 F.Supp.2d 1007, 1010 (S.D. Ind. 1998) ........................................................5, 9

*Guarantee Trust Life Ins. Co. v. Wood*
  631 F.Supp. 15 (D.Ga. 1984) ..........................................................................16

*Hammonds Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.*
  501 N.E.2d 458, 460-62 (Ind. App. 1986) ...................................................8, 9, 14

*Janzen v. Workers Compensation Appeals Board*
  61 Cal.App.4th 109, 115 (Cal.App. 1997) ...................................................5, 6, 7

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal.4th 1134, 1151-1152, 1165 (Cal. 2003) ........................................7, 10, 19

*Ledesma v. Jack Stewart Produce, Inc.*
  816 F.2d 482, 484 (9th Cir. 1987) ............................................................5, 6

__STATUTES, REGULATIONS, RULES__

California Business and Professions Code, Section 17200, et seq.  ..............1, 4, 6, 7, 8, 10, 19

California Civil Code Section 3301  ..............................................................................1

California Civil Code Section 1646  ........................................................................13, 14

Fed. Practice & Proc. Civ. §2738 (3d ed.)  ..............................................................18

Fed. R. Civ.P., Rule 56(e)(1)  ........................................................................... 18-19

Fed. R. Evidence, Rule 101 ..................................................................................16

Fed. R. Evidence, Rule 104 ..................................................................................17

Fed. R. Evidence, Rule 106 ..................................................................................17

Fed. R. Evidence, Rule 401 ..............................................................................12, 16

Fed. R. Evidence, Rule 402 ..................................................................... 12,, 16, 17, 18

Fed. R. Evidence, Rule 403 ..............................................................................12, 17

Fed. R. Evidence, Rule 602 ..................................................................................18

Fed. R. Evidence, Rule 701 ..................................................................................18

Fed. R. Evidence, Rule 801 ..................................................................................19

Fed. R. Evidence, Rule 802 ..................................................................................19

Restatement Second of Contracts, Section 64, Comment c  ..............................................14

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.    INTRODUCTION AND FACTS IN GENUINE DISPUTE

Plaintiff Cryotech International, Inc., a Delaware corporation formerly known as VBS Industries Incorporated ("Cryotech"), opposes the Motion for Partial Summary Judgment of Defendant Technifab Products, Inc., an Indiana corporation ("Technifab") and submits this Memorandum of Points and Authorities in Support.  Technifab's Motion for Partial Summary Judgment ("Technifab's Motion") has two principal bases:  (1) Technifab contends that under California's choice of law rules, Indiana law should apply to Cryotech's claims for Intentional Interference with Prospective Economic Advantage (Count II) and Unfair Competition under Section 17200 of the California Business & Professions Code ("B&P Code") (Count IV) because Indiana allegedly has a greater interest in this dispute than California; and (2) Technifab contends that Cryotech has supposedly failed to specify its damages, citing California Civil Code Section 3301, which provides:  "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."

Technifab's legal arguments are misplaced and its factual analysis is blatantly misleading.  For example, Technifab would mislead this Court into believing that no substantive negotiations took place after the Parties met in Indiana to address outstanding issues over the Parties' Exclusive Manufacturing and Distributor Agreement, dated September 10, 2001 (the "Agreement"), but not signed until mid-November 2001.  Technifab, through the Declaration of Douglas Short ("Short Declaration"), fails to identify when the "meeting" to resolve the issues took place, namely, whether it occurred on or about March 1 and 2, 2001, or later in August 2001, and why the meeting is significant as to whether California or Indiana law applies when Technifab produced in discovery at least six revisions to the Agreement, and numerous letters

and memoranda setting forth proposed changes to the Agreement being negotiated after the alleged August 2001 meeting.  Cryotech's additional, significant proposed changes to the proposed Agreement occurred in California; Cryotech resolved the outstanding issues from California; and, on or about November 10, 2001, Gary L. Sandercock, Cryotech's President and CEO, signed the Agreement and mailed it to Technifab's management for signature.  Attached as Exhibit "A" to the accompanying Declaration of Douglas A. Rubel ("Rubel Declaration") is a copy of the numerous, relevant letters, memoranda and versions of the then-proposed Agreement that were part of the negotiations after the (unspecified by Technifab (Douglas Short Declaration)) alleged "meeting" that culminated in the Agreement.  In short, there were significant, philosophical differences between the parties after the alleged "meeting" that Cryotech resolved in California.  Rubel Declaration at Exhibit "A".

Similarly, Technifab would mislead this Court into believing that all of the products under the Agreement were produced in Indiana.  Yet, Cryotech produced many of the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ of those products in California.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮  Attached as Exhibit "E" to the accompanying Rubel Declaration is a copy of the relevant portions of the Deposition Transcript of Gary Sandercock, Cryotech's President and CEO ("Sandercock Tr.").  Rubel Declaration at Exhibit "E", at 67:8-68:12, 116:1-7, and 124:7-125:14.

Indeed, Technifab's contention that it had little connection with California is blatantly false.  For example, Technifab's own "Ship-To Conflict Report" indicates that it "drop shipped" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮  Attached as Exhibit "B" to the accompanying

Rubel Declaration is a copy of Cryotech's (counsel's) spreadsheet summarizing the information set forth in Technifab's Ship-To Conflict Report.[1]

Technifab's numerous violations of the Agreement, for which Cryotech is claiming (and has previously claimed) damages, also had a significant connection to California.  For example, ████████████████████████████████████ that Cryotech has identified as improper under the Agreement occurred in California, almost one-third of what Cryotech presently claims. Attached as Exhibit "C" to the accompanying Rubel Declaration is a copy of Cryotech's Second Supplemental Answers to Interrogatories.  Attached as Exhibit "D" to the Rubel Declaration is a copy of Cryotech's counsel's updated damages itemization.  ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Technifab's sales personnel are alleged████████████████████ to telling Cryotech's California (and other) customers that Technifab made products for Cryotech and that they, the customer, should purchase those products directly from Technifab.[3]  Complaint [Doc. No. 1] at ¶¶ 15-19.  ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

[1] Technifab's "Ship-To Conflict Report" was produced as "Confidential" under the Stipulated Protective Order in this case [Doc. No. 36] ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ Because the Technifab Report is "Confidential", Cryotech is filing its counsel's spreadsheet under seal.

[2] Attached to Cryotech's Motion for Partial Summary Judgment as Exhibit "D" to the Rubel Declaration is a copy of Technifab's organizational charts.

[3] ████████████████████████████████████████████████████████ ████████████

[4] Technifab maintained at least one salesperson in California, Mustafa Hossaini.

Thus, Cryotech submits that there is more than a "metaphysical doubt" about what Technifab contends are the genuinely undisputed facts of this case.

Similarly, Technifab's Motion is procedurally improper.  Technifab uses hearsay instead of competent evidence and misapplies choice of law rules to argue for the application of Indiana law to Cryotech's claims for Intentional Interference with Prospective Economic Advantage (Count II) and for Unfair Competition under B&P Code Section 17200.  As to the applicable law, the existence or performance of a contract is not a *sine qua non* of a claim for intentional interference with prospective economic advantage.  As to the alleged facts of contract formation, Technifab has not produced any definitive evidence that the Agreement was formed in Indiana; rather, Technifab merely proffers what amounts to nothing more than a Declaration (of Douglas Short) that is dripping with hearsay and unsupported by any documentary evidence.  Again, the documents that Technifab produced in discovery that demonstrate that the contract negotiations continued after any alleged meetings; Cryotech and its counsel's continued review of the Agreement occurred in California; Cryotech executed the Agreement in California; and the Agreement was performed as much in California as in Indiana, with a California party (Cryotech), and substantially involving Cryotech's customers in California.  Moreover, Technifab breached the Agreement in California, by, among other things, directly conducting business in California, including, without limitation, soliciting and obtaining direct business with one of Cryotech's long-time customers, Novellus Systems, Inc. ("Novellus").  Cryotech respectfully submits that Technifab's dearth of reliable, competent evidence, together with the documentary evidence attached to the Rubel Declaration, and the Sandercock and Clausen Deposition Transcripts submitted therewith, show that California law applies.  At a minimum, a genuine issue of material fact exists regarding the application of California law to Cryotech's second and fourth causes of action.  Therefore, this Court should deny Technifab's Motion as to

Counts II and IV and the application of Indiana law thereto.

Finally, Technifab misrepresents Cryotech's earlier evidence of specific damages and fails to inform the Court that Technifab produced invoices in this litigation that demonstrate Cryotech's specific damages.  For example, Cryotech compiled and has produced to Technifab ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Rubel Declaration at Exhibits "C" and "D".  This information supplements Cryotech's original Response to Technifab's Interrogatory No. 14., dated April 30, 2009, in which Cryotech summarized its damages prior to formal discovery in this case.  ███████████████████████ ████████████████████████████████████████████████████████ *Id*. at Exhibit "D". ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ *Id*. at Exhibits "C" and "D".  At the very least, a triable issue of material fact exists regarding the amount of Cryotech's specific damages and Technifab's Motion fails.

## II.   LEGAL DISCUSSION

In resolving a motion for summary judgment, a court must draw all reasonable inferences in a light most favorable to the non-movants.  *Butts v. OCE-USA, Inc.* (S.D.IN. 1998) 9 F.Supp.2d 1007, 1010.

### A.   Technifab Constructs a False Dispute Concerning Choice of Laws

#### 1.   Technifab Misapplies The "Governmental Interest" Test

Technifab acknowledges that "[i]n diversity actions, federal courts are to apply the choice-of-law rules of the forum state".  Motion, at 10:2-3 (*citing Ledesma v. Jack Stewart Produce, Inc,* 816 F.2d 482, 484 (9th Cir. 1987)).  It further contends that "[i]n a case such as this—where the Agreement contains no choice of law provision—California generally follows a

'governmental interest' approach to choice of law questions."  Id. at 10:4-6 (*citing Janzen v. Workers Compensation Appeals Board*, 61 Cal.App.4[th] 109, 115 (Cal.App. 1997)).  Technifab then acknowledges that the governmental interest approach—described in the case law as an "amorphous and somewhat result-oriented approach"—involves a three-step examination of the issues, which is described in *Arno v. Club Med., Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994), as follows:

> Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine whether there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.  *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) (*citing Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161-165, 148 Cal.Rptr. 867, 583 P.2d 721 (1978).

Id. at 10:9-12.

The first step, then, is to consider if California's law differs from Indiana law.  *Id.*  Cryotech submits that, in so doing, however, Technifab improperly analyses California law and attempts to manufacture a "difference" between California law and Indiana law.  Cryotech submits that California law is substantially similar to Indiana law.[5]

### a.       The *Ledesma* and *Janzen* Cases are Distinguishable

*Ledesma, supra,* is inapplicable to this case.  *Ledesma* was a personal injury action in which there was a comparison between California's one-year and Arizona's two-year statute of limitations.  *Ledesma, supra*.  The court was motivated to find for plaintiff-appellant regarding an accident which occurred in Arizona, particularly given the injustice that would have resulted if the injured plaintiff's case were time-barred by California's one-year statute of limitations.

---

[5]       Technifab does not seek the application of Indiana law to Cryotech's claims for Breach of Contract (Count I) or Misappropriation of Trade Secrets (Count III) because California law and Indiana law are "substantially similar".  Motion at p. 10:26-28, fn. 3.  Technifab acknowledges that California's interest in having its own contract law and trade secret law applied to this case is substantial.

Such a conflict does not exist in this case except that Technifab conveniently constructs a "conflict" to suit its own motives for purposes of Technifab's Motion.  There is no "accident" that occurred in Indiana.  Here, the supposed additional element of "absence of justification" under Indiana law regarding intentional interference with prospective economic advantage is not a conflict, as exists between the statutes of limitations under *Ledesma*.  Moreover, even if Indiana law does not contain an unfair competition statute as under California's B&P Code Section 17200, the supposed absence of law does not present a "conflict" as existed under *Ledesma*.  Here, the juxtaposition of California and Indiana law does not present a direct conflict or difference akin to that presented in *Ledesma*, and, therefore, it is inapposite and inapplicable.

*Janzen, supra,* is also inapplicable to this case.  Technifab improperly tries to cram *Janzen* into this case.  *Janzen* is a workers' compensation case in which the court did not find any conflict of laws even to exist.  "Under California law a contract entered into over the telephone is deemed made where the offeree expressed acceptance or, if the offeree cannot be determined, where the employee was located.  The parties cite no authority for a different rule under Wyoming law, nor have we independently found any Wyoming cases or statutes bearing on the issue.  There being no apparent conflict in the laws of the two states on the only matter at issue, there is no occasion to consider the conflicting interests of California and Wyoming."  *Janzen, supra* at 115.  Here again, mere difference or absence of law—as Technifab argues respecting Cryotech's second and fourth causes of action—are not a sufficient basis to necessitate a conflict of laws analysis.  This again is just a straw man constructed by Technifab.  Because there is no "conflict", even under a case cited by Technifab, *Janzen* should not be considered applicable to this case.  Furthermore, *Janzen* is inapplicable because the statement that "where the Agreement contains no choice of law provision . . . " makes no sense in this context.  Cryotech's claim for intentional interference with prospective economic advantage is

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

not premised upon the existence of any contract.  This Opposition explores this concept further below.

### 2.    There Is No Substantive Difference Between California and Indiana Law

Under the governmental interest analysis, this Court must consider if California's law differs from Indiana law.  Technifab contends that the difference between California law and Indiana law regarding Cryotech's Intentional Interference with Prospective Economic Advantage claim (Count II) is that "Indiana law includes as an element of proof on the part of the plaintiff the absence of any justification.  No such element exists under California law.  Further, Indiana law requires proof that the defendant acted illegally in achieving his [sic.]."  Motion at 11:5-8.  Technifab further contends that, as to Cryotech's Unfair Competition claim (Count IV), "Indiana law has no broad-based statutory unfair competition statutes which are in any way similar to [B&P Code Section 17200].  Indiana does recognize a common law tort of unfair competition, but that tort is limited to acts of passing off or attempting to pass off, upon the public, the goods or business of one person as and for the goods and business of another [citation omitted]".  *Id*. at 11:21-25.  Indeed, as set forth in the case that Technifab cites:

> The tort of unfair competition is premised upon the rationale that a **person who has built up good will and reputation for his business is entitled to receive the benefits from his labors**.  *Hartzler v. Goshen Churn and Ladder Co.* (1914), 55 Ind. App. 455, 464, 104 N.E. 34, 37.  Our courts have held that such an interest is a property right deserving judicial protection.  *Id.*

> Our court long ago stated the general principles of unfair competition as follows:

> "'Unfair competition consists in passing off or attempting to pass off, upon the public, the goods *or business* of one person as and for the goods *or business* of another.  **It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect.  And it may be stated broadly that any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods *or business* of one person as and for that of another, constitutes actionable unfair competition.  The**

**definition is comprehensive enough to reach every possible means of effecting the result**.' 38 Cyc. 756."

*Id.* (Emphasis added).  *See also Minas Furniture Co. v. Edward C. Minas Co.* (1929), 96 Ind. App. 520, 165 N.E. 84, *trans. denied.* More recently, federal courts have interpreted Indiana's law on unfair competition as an attempt to create confusion as to the source of the unfair competitor's goods.  *Westward Coach Manufacturing Co. v. Ford Motor Co.* (7th Cir. 1968), 388 F.2d 627, 633, *cert. denied,* 392 U.S. 927, 88 S. Ct. 2286, 20 L. Ed. 2d 1386; *Terry v. International Dairy Queen, Inc.* (N.D. Ind. 1983), 554 F. Supp. 1088, 1098.  In alleging unfair competition, the plaintiff is not required to show actual deception, but only that deception is the natural and probable consequence of the tortfeasor's actions.  *Hartzler,* at 465, 104 N.E. at 37; *Deister,* at 420, 112 N.E. at 909; 20 I.L.E. *Monopolies and Unfair Trade* § 11 (1959).  However, actual examples of public deception "afford the strongest possible proof of the deceptive tendency of defendant's acts."  *Hartzler,* at 465, 104 N.E. at 38.  When considering the issue of deception, **we look to "the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates**."  *Durakool, Inc. v. Mercury Displacements Industries, Inc.* (1981), Ind. App., 422 N.E.2d 680, 682 n.3, trans. denied.

*Hammonds Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.*, 501 N.E.2d 458, 460-62 (Ind. App. 1986) (emphasis supplied).  Technifab fails to explain how this differs from California law.

Nonetheless, Technifab cites two cases under its analysis of the first *Arno* test regarding difference in the laws, as applied to Cryotech's second cause of action for intentional interference with prospective economic advantage:  *Korea Supply Co. v. Lockheed Martin Corp.* (Cal., 2003) 29 Cal.4th 1134, 1152, and *Butts v. OCE-USA, Inc.* (S.D.Ind., 1998) 9 F.Supp.2d 1007.  *Id.* at 10-11.  According to Technifab, the "elements of tortious interference with the prospective economic advantage under Indiana law include as an element of proof on the part of the plaintiff the absence of any justification".  Technifab baldly contends, with little legal analysis, that this "difference" triggers the application of Indiana law, however, Technifab fails to explain what the difference truly is and how the "difference" is significant.  Technifab's

1   reasoning is flawed for the following reasons.

2       First, the tort of intentional interference with prospective economic advantage does NOT

3   require the existence of an Agreement.  *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 823.

4   Therefore, Technifab's application of the "governmental interest" analysis under *Janzen—*

5   *"where*  the Agreement contains no choice of law provision"—is nonsensical in the context of

6

7   Cryotech's second cause of action.

8       Second, Technifab's alleged distinction between California and Indiana law as being an

9   "absence of justification" is actually a distinction without any difference.  Indiana's "absence of

10  justification" simply grafts California's general defense of justification into the elements of the

11  Indiana law, however, it does nothing to change the practical effect of the application of each

12  state's law and the defenses thereto.  To that end, a California defendant whose acts were

13  otherwise justified would presumably be able to raise some "justification" as a defense.  *Korea*

14  *Supply Co., supra,* addresses this unstated element of "absence of justification":  "[I]f a

15  defendant knows that its wrongful acts are substantially certain to injure the plaintiff's business

16  expectancy, the defendant can be held liable, regardless of the motivation behind its actions.  ...

17  [However], [l]iability will not be imposed for *unforeseeable harm*, since the plaintiff must prove

18  that the defendant knew that the consequences were substantially certain to occur".  *Korea*

19  *Supply Co., supra,* at 1165.

20

21

22      Cryotech respectfully submits that Indiana's "absence of justification" is the same as

23  California's "unforeseeable harm".  That "unforeseeable harm" is not an express element of

24  California's intentional interference with prospective economic advantage does not mean that

25  justification is not a recognized defense under California law.  The *Korea Supply Co.* court's

26  mention of "unforeseeable harm" is the functional equivalent of what Technifab would have this

27  Court determine is a "different" element of "absence of justification".  Thus, California and

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Indiana law are nearly identical and Technifab's Motion must be denied because there is no reason to apply Indiana law over California law on the basis of this false difference.

As to Technifab's statement that California and Indiana law differ with respect to the statutory "unfair competition" law under B&P Code Section 17200—because Indiana law has no "broad-based statutory unfair competition statutes"—Technifab fails to meet its burden of proof as to any laws that support the position that absence of one state's laws in a particular field precludes application of the forum state's law.  Here, California law should apply because Technifab fails to offer **any** authority—other than its own flawed rationale—as to why the absence of statutory authority justifies application of Indiana law.

Ironically, Indiana's acts consisting of "passing off or attempting to pass of, upon the public, the goods or business of one person as and for the goods and business of another" is precisely what Cryotech has alleged in this case.  Cryotech contends that Technifab tried to pass itself off as a "joint venturer" of Cryotech by having its sales personnel explain to Cryotech's customers that Technifab was the manufacturer for Cryotech; was a joint venturer with Cryotech; and that Cryotech's customers should simply purchase directly from Technifab and bypass Cryotech.  Complaint at ¶¶ 15-19█████████████████████████████████████ ███████████████████████████  Technifab does not address the allegations of the Complaint or proffer any factual evidence for what Cryotech alleges in this case to be Technifab's unfair competition.  Technifab merely surmises that because California's law of unfair competition is supposedly broader than Indiana's law—without any reference to the facts of this case—that there is an important and relevant difference between the two state's laws. This is improper and impermissible.

        **3.**      **<u>According To Technifab, This Court Must Examine Each State's Interest In Applying The Law To Determine If A "True Conflict" Exists; However, Technifab Misleads The Court As To California's Interest In Applying Its Own Law</u>**

The real question to be addressed under the governmental interest approach is not which state has the greater interest, but whether each state has an interest in applying its own law to determine whether there is a "true conflict".  Although, Cryotech submits, there is no actual difference between California law and Indiana law as they pertain to this case, assuming, *arguendo,* a difference does exist, Technifab misleads the Court as to California's interest in applying its own law.  Technifab asserts that Indiana's interest outweigh California's interest because:  Technifab is headquartered in Indiana; it is incorporated there; "face-to-face" negotiations occurred in Indiana allegedly to "break the impasse" over the stalled Agreement negotiations; and the Agreement was performed in Indiana ████████████████ ████████████████████████████████████ Motion, at 12:5-11 (*citing* Short Declaration at 2:2-23).  Technifab further contends that California's interest in applying California law is diminished—not that that matters—because while Cryotech's headquarters are in Northern California (formerly Campbell; now San Jose), it incorporated in Delaware; Cryotech has offices in other states and countries; and, ██████████████████ ████████████████████████████████████████████ ████████████████ *Id*., at 12:16-27.  This is misleading.

Technifab seems to argue with respect to Cryotech's intentional interference claim that the Agreement is somehow relevant (it is not).  Technifab contends that when "negotiations regarding the creation of the Agreement reached an impasse, face-to-face negotiations between the parties were conducted within the State of Indiana to break the impasse.  (Doug Short Declaration, p. 2:2-3.)"  This contention is incorrect on at least three levels.

First, the tort of intentional interference with prospective economic advantage is not conditioned on the existence of the Agreement or another contract.  To cite a case in Defendant's Motion:  "[t]he great weight of authority is that the tort of interference with contract is merely a

species of the broader tort of interference with prospective economic advantage. [Citations omitted.] Thus while the elements of the two actions are similar, the existence of a legally binding agreement is not a *sine qua non* to the maintenance of a suit based on the more inclusive wrong." *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 823 (*cited in* Motion, at 15:4-5).  Therefore, Technifab's entire discussion about the formation of the Agreement and the references to the Declaration of Douglas Short are irrelevant and inadmissible under Federal Rules of Evidence ("FRE") 401 and 402 (irrelevance and consequent inadmissibility) for purposes of application to Plaintiff's second cause of action and this Court also should exclude the Short Declaration from evidence due to confusion of the issues.  FRE 403 (preclusion of evidence due to confusion of issues).  Technifab's Motion should, therefore, fail on the grounds that there exists a genuine issue of material fact respecting the purported conflict of laws between California and Indiana under the second test of *Arno*.

Moreover, as noted above, the alleged facts with regard to contract formation are in genuine dispute.  Technifab and Mr. Short fail to inform the Court that substantial differences of opinion existed over the parties' relationship even after the (unspecified by Mr. Short) "meeting" that resulted in considerable additional contract review and negotiations, culminating in the Agreement being signed in November 2001 (not in March when the first meeting occurred or in August when the second meeting occurred).  Rubel Declaration at Exhibit "A".

Second, even if the Agreement were at issue—which it is not because an agreement is not required for the second cause of action to apply—the place where the contract is performed is only a consideration for determining the law under which to interpret the contract:

> A contract is to be interpreted according to the law and usage of
> the place where it is to be performed; or, if it does not indicate a
> place of performance, according to the law and usage of the place
> where it is made.

California Civil Code § 1646.

Here Technifab concedes that California law applies.   Motion at 10:26-28, fn. 3. Moreover, there is substantial evidence that the Agreement was performed in California, as demonstrated by Technifab's own invoices and Technifab's violations of the Agreement in California.   Rubel Declaration at Exhibits "B" and "D".

*Id.* at Exhibit "B".

*Id*. at Exhibits "B" and "D".

Sandercock Tr. at 67:8-68:12, 116:1-7 and 124:7-125:14.  Cryotech paid Technifab from California.

Third, the Short Declaration does not specify where the Agreement was executed or actually performed.  To quote another case that Technifab cites, "[b]ecause the contract here doesn't specify a place of performance, Cal.Civ.Code §1646 requires the court to apply the law of California where the contract was made, *i.e.,* where Arno accepted. *See Restatement Second of Contracts* § 64, Comment c (contract made in place where acceptance spoken over telephone)." *Arno v. Club Med., Inc.* (1994) 22 F.3d 1464, 1469, fn. 6 (*cited in* Motion, at 10 and 12).  Even applying the test of "where the contract was made", the Short Declaration is actually silent on this issue because it says that an impasse occurred in Indiana and that "the Agreement was subsequently executed by the parties".  Motion, at Short Declaration, ¶ 6, p. 2:21-23.  Even if this Court accepts that there was an impasse, this does NOT specify where the Agreement was formed or executed, and so the Declaration is useless to decide those questions.

Given that the Declaration is inapplicable and irrelevant on the question of contract formation or execution, Technifab has failed to resolve the genuine issue of material fact on those questions. Thus, this Court should deny Technifab's Motion for this reason alone.

**4.** **Indiana's Interests Would Not Be Impaired If California Law Applied To Counts II and IV; Cryotech's Request for Injunctive Relief And Claim For Monetary Damages Is Not Against Either State's Interest**

To manufacture an alleged impairment to Indiana's interests in this case, Technifab focuses only on Cryotech's claim for injunctive relief. Technifab baldly concludes that Indiana's interests would be "substantially impaired" but does not explain how or why that would be true. Indeed, Indiana's unfair competition law provides for injunctive relief. *Hammonds Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.*, *supra*. Indiana has as much interest in enjoining improper and unfair competition as California. *Id.*

Moreover, Technifab wholly ignores that the elements of intentional interference with prospective economic advantage include monetary damages, and not just equitable or injunctive relief, for purposes of constructing its straw man for Technifab's Motion.[6] Technifab insists on addressing Cryotech's claim for injunctive relief in applying the third prong of *Arno, i.e.* "impairment to each jurisdiction under the other's rule of law". Technifab argues that if an injunction were to apply to Technifab, "competition among cryogenic suppliers would likely decrease—not increase—in and to the detriment of California". Motion, at 14:3-4.

Plaintiff primarily seeks money damages. Applying dollar damages to the third prong of *Arno* produces a different result—one in which the only consideration is how much money Technifab owes Cryotech for competing against Cryotech in material violation of the

---

[6]     The elements of intentional interference with prospective economic advantage under California law are "(1) an economic relationship between [the plaintiff and some third person] containing the probability of future economic benefit to the [plaintiff], (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, [and] (5) damages to the plaintiff proximately caused by the acts of the defendant." *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 827.

Agreement.  Considering monetary damages does not involve an analysis of the effect on California commerce, but Technifab would have this Court believe that injunctive relief is the only consideration.

To be clear, Plaintiff is asking for money damages under the second cause of action.  This Court, therefore, need not necessarily consider the third prong of *Arno*.  This means that there is a genuine issue of material fact under the second cause of action, *i.e.*, how much money Technifab owes Cryotech due to Technifab's intentional interference with Cryotech's prospective economic advantage.  The question is, therefore, not necessarily whether California's business will be impaired, however, more narrowly whether Technifab is liable for intentionally interfering with Cryotech's prospective economic advantage.  Technifab's purported analysis avoids the crucial question of liability for the second cause of action and focuses on injunctive relief, instead of also addressing the equally relevant damages element under applicable law. Technifab is doing this to construct the proverbial "straw man".  If the third prong of *Arno* need not apply, then Technifab's analysis fails and this Court should deny Technifab's Motion because there still exists a genuine issue of material fact regarding damages.[7]

### B.     The Declaration of Douglas Short is Inadmissible Because it is Irrelevant, Lacks Foundation and is Hearsay under the Federal Rules of Evidence

Before addressing the specific damages issue raised by Technifab, this Court must address the evidentiary rules under the Federal Rules of Evidence ("FRE").  FRE 101; *Guarantee Trust Life Ins. Co. v. Wood* (D.Ga. 1984) 631 F.Supp. 15.  Questions of evidence apply because Technifab uses the Short Declaration to support its position that certain conversations took place between Cryotech and Technifab in Indiana regarding negotiations of the Agreement between the parties, and that ███████████████████████

---

[7]     See further discussion below regarding Plaintiff's specific damages as demonstrated by supplemental interrogatory responses and specific lost sales and profit amounts.

1

██████████████████████████████████████   Motion, at 3:4-12 and 4:21-28.  Mr.

2

Short's percentage estimation is irrelevant; lacks any foundation in documentary evidence;

3

confuses the issues; and is hearsay.

4

5

        The Declaration of Douglas Short is irrelevant to Defendant's analysis of the second

cause of action, as set forth in FRE 401:

6

7

                **Rule 401.  Definition of "Relevant Evidence"** "Relevant
                evidence" means evidence having any tendency to make the
                existence of any fact that is of consequence to the determination of
                the action more probable or less probable than it would be without
                the evidence.

8

9

10

        Here, Mr. Short's Declaration is not relevant to the discussion at page 12 of Technifab's

11

Motion because formation of the Agreement is not a necessary element of Plaintiff's second

12

claim for intentional interference with prospective economic advantage.  *Buckaloo v. Johnson*

13

(1975) 14 Cal.3d 815, 823.   Insofar as intentional interference with prospective economic

14

advantage is additional grounds for Plaintiff's fourth cause of action under B&P Code Section

15

16

17200, Mr. Short's Declaration also is irrelevant to that claim, as set forth in FRE 402:

17

                **Rule 402. Relevant Evidence Generally Admissible; Irrelevant
                Evidence Inadmissible** All relevant evidence is admissible, except
                as otherwise provided by the Constitution of the United States, by
                Act of Congress, by these rules, or by other rules prescribed by the
                Supreme Court pursuant to statutory authority. Evidence which is
                not relevant is not admissible.

18

19

20

21

        Because the Declaration of Douglas Short is irrelevant, it is inadmissible, as set forth in

22

FRE 403:

23

                **Rule 403. Exclusion of Relevant Evidence on Grounds of
                Prejudice, Confusion, or Waste of Time** Although relevant,
                evidence may be excluded if its probative value is substantially
                outweighed by the danger of unfair prejudice, confusion of the
                issues, or misleading the jury, or by considerations of undue delay,
                waste of time, or needless presentation of cumulative evidence.

24

25

26

27

        To admit the Short Declaration as to the second cause of action or even the fourth cause

28

of action, insofar as the fourth cause of action relies upon the second cause of action, is to

confuse the issues, *i.e.*, that the formation of the Agreement is not necessary for the second claim to apply.  Therefore, the Short Declaration should be inadmissible for purposes of explaining formation of the Agreement due to its irrelevance under FRE 401 and 402 and confusion of the issues under FRE 403.

Similarly, the Short Declaration lacks sufficient foundation:

> **Rule 104. Preliminary Questions**
> **(a) Questions of admissibility generally.**
> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Here, this Court's role is to determine whether Mr. Short's declaration should be admissible.  To that end, FRE 106 provides:

> **Rule 106. Remainder of or Related Writings or Recorded Statements**
> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Mr. Short's statement regarding ██████████ is not supported by any contemporaneous documentary evidence.  Cryotech objects to this statement on the grounds that Technifab should produce contemporaneous evidence to support this assertion.  Similarly, there is no foundation for Mr. Short's statement, as is required under FRE 602:

> **Rule 602. Lack of Personal Knowledge**
> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

Mr. Short's statement is not supported by any foundational statement of purported personal knowledge.

> **Rule 701. Opinion Testimony by Lay Witnesses**

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Mr. Short's bald conclusory statement that ███████████████████████ ██████████ is not an inference based on any rational basis in documentary or other evidence.  It is merely his personal opinion.

Because an affidavit is an *ex parte* statement by a witness whose demeanor cannot be observed, more reliable forms of proof should be used in place of or to supplement an affidavit when that is possible and appropriate.  10B Fed. Prac. & Proc. Civ. § 2738 (3d ed.).  The movant also must show that the content of his affidavits would be admissible at trial.  Doubts as to the quality of the material often will be resolved against the movant.  *Id.*  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify regarding the matters stated.  FRCP Rule 56(e)(1).

The Short Declaration is used to support the premise that ████████████████████ ██████████████████████████████████.  Motion, at Short Declaration at 3:4-6.  Mr. Short offers no documentary proof to demonstrate this alleged ██████████████ Without such documentation, this statement lacks foundation and should be inadmissible at trial.  This Court should strike the portion of Mr. Short's declaration, therefore, and not consider it in support of Technifab's Motion.  It is hearsay, under FRE 801 and 802:

> **Rule 801. Definitions**
> The following definitions apply under this article:
> **(a) Statement.**
> A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.
> **(b) Declarant.**
> A "Declarant" is a person who makes a statement.
> **(c) Hearsay.**

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
**(d) Statements which are not hearsay.**

**Rule 802. Hearsay Rule**
Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.

Here, Mr. Short's Declaration is hearsay because it is an out of court statement offered to prove the truth that Technifab ████████████████████████ of its products.  This is hearsay without any supportable exception and should be excluded as a matter of law.

**C.      Cryotech's Damages _ARE_ Specific or At Least Create a Genuine Issue of Material Fact Sufficient to Defeat Technifab's Motion**

Under the tort of intentional interference with prospective economic advantage, damages are a specific element of the cause of action.  _Buckaloo v. Johnson_ (1975) 14 Cal.3d 815, 827.  Under B&P Code Section 17200, "[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims".  _Korea Supply Co. v. Lockheed Martin Corp._ 29 Cal.4th 1134, 1151 (citation omitted).

Thus, specific damages are afforded under Cryotech's second and fourth causes of action respectively.  Cryotech has produced specific damage amounts in the form of its initial response to interrogatories on April 30, 2009, deposition testimony, and supplemental responses.  Rubel Declaration at Exhibits "B", "C" and "D".  Cryotech's specific damage numbers belie any of Technifab's assertions that Cryotech cannot prove its damages with a reasonable degree of certainty.  Technifab's Motion at 14:13-28 and 15:1-12.  Because Cryotech has produced evidence of specific damages related to Cryotech's four causes of action, Technifab's Motion must fail given that there are triable issues of material fact on this issue.

Technifab's contentions that Cryotech's executive officers could not testify as to damages as deposition are disingenuous:  Technifab's invoices and almost all other sales data

and information was designated "Highly Confidential – Attorney's Eye's Only" under the Stipulated Protective Order in this case.  [Doc. No. 36.]  Cryotech's executive officers could not have known the extent of Technifab's violations and the damages caused thereby without violating the Stipulated Protective Order.  Cryotech's counsel couldn't fully address the damages without fully conducting discovery and consulting with a cryogenic expert to determine the exact nature and extent of the damages.  Again, Technifab has misled the Court.

**III.**     **CONCLUSION**

For the foregoing reasons, Plaintiff Cryotech International, Inc., respectfully requests this Court to deny the Motion for Partial Summary Judgment of Defendant, Technifab Products, Inc.

Respectfully submitted,

DATED:  March 16, 2010                          JOHANSON BERENSON LLP

By:     /s/ David R. Johanson
David R. Johanson

By:     /s/ Douglas A. Rubel
Douglas A. Rubel

Attorneys for Plaintiff Cryotech
International, Inc.

1

## **Certificate of Service**

2

I hereby certify that on March 16, 2010, I filed electronically a true and correct copy

3

of the foregoing:  Plaintiff's Opposition To Defendant's Motion For Partial Summary Judgment;

4

Memorandum Of Points And Authorities and Declaration In Support Thereof; [Proposed] Order.

5

Notice of the filing was sent by operation of the Court's electronic filing system to the parties

6

indicated below.  All other parties will be served by regular U.S. mail.  Parties may access this

7

filing through the Court's electronic filing system.

8

9  **Arthur J. Casey, Esquire (Bar No. 123273)**
ROBINSON & WOOD, INC.

10  227 North First Street
San Jose, California  95113-1016

11

**Mark Hassler, Esquire (*Pro Hac Vice*)**

12  HUNT, HASSLER & LORENZ, LLP
100 Cherry Street

13  Post Office Box 1527
Terre Haute, Indiana 47808

14

*Attorneys for Defendant Technifab Products, Inc.*

15

16

17                                                    /s/ Douglas A. Rubel
                                                     DOUGLAS A. RUBEL

18                                                   Attorneys for Cryotech International, Inc.

19

20

21

22

23

24

25

26

27

28