\*\* E-filed April 26, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRYOTECH INTERNATIONAL, INC., a Delaware Corporation, fka VBS INDUSTRIES INCORPORATED,<br><br>          Plaintiff,<br>   v.<br><br>TECHNIFAB PRODUCTS, INC., an Indiana Corporation; and DOES 1–50 inclusive,<br><br>          Defendant.<br>_____ / | No. C08-02921 HRL<br><br>**ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 159, 164]** |

Cryotech International, Inc. ("Cryotech") and Technifab Products, Inc. ("Technifab") are competing companies in the cryogenic industry. They signed a contract obligating Technifab to exclusively produce certain products that Cryotech agreed to exclusively purchase and sell. Cryotech later sued Technifab for allegedly using Cryotech's confidential information to bypass Cryotech and sell products directly to Cryotech's customers in violation of the contract. Technifab then countersued Cryotech for allegedly outsourcing to others the production of products for which Technifab was to be the sole source, and for failing to use best efforts to sell Technifab's products.

Both parties now move for partial summary judgment, and each side opposes the other's motion. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court DENIES the parties' motions.[1]

---

[1] In Technifab's motion, both parties object to some of the other side's evidence. For purposes of this motion only, the parties' objections are sustained.

1

**LEGAL STANDARD**

A court may grant a motion for summary judgment when the pleadings and discovery material on file show no genuine issue of any material fact. Fed. R. Civ. P. 56(c). Material facts include those that could affect the outcome of the litigation, as identified by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

The moving party has the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not meet its initial burden, then "the nonmoving party has no obligation to produce anything" and the court must deny summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the moving party does meet its initial burden, then the nonmoving party must "produce[] enough evidence to create a genuine issue of material fact" to defeat the motion. *Id.* at 1103.

**DISCUSSION**

**A.   Background**

Cryotech and Technifab entered into a seven-year, renewable, Exclusive Manufacturing and Distributor Agreement (the "Agreement") in 2001. (Compl. Ex. A.) Section 1 of the Agreement establishes that with some exceptions, Technifab would "act as the exclusive manufacturer" and Cryotech would "act as the exclusive distributor" of two schedules of products ("Scheduled Products"). Schedule 1-A includes the "current form" of Dynaflex, Polyflex, Phase Separators, "LCIs" (injectors), and Statiflex, while Schedule 1-B includes the current form of standard transfer hoses. (Compl. Ex. A. at 8.) Section 3 of the Agreement outlines the parties' responsibilities concerning new products, improvements to existing products, and joint patents. (*Id.* at 2.)

The relationship between the two companies deteriorated over the years, culminating in the early termination of the Agreement. Cryotech filed the instant lawsuit in June 2008, alleging four claims for relief: (1) breach of contract, (2) interference with prospective economic advantage, (3) misappropriation of trade secrets, and (4) unfair competition. (Docket No. 1.) Technifab answered

and counterclaimed for breach of contract.  (Docket No. 12.)  Fact and expert discovery closed in December 2009 and February 2010, respectively, and both parties now seek partial summary judgment.

**B.     Technifab's Motion (Docket No. 159)**

*1.     Choice of Law*

Technifab first moves for summary judgment as to the choice of law that applies to Cryotech's second and fourth claims.  Cryotech is a Delaware corporation, but nobody thinks Delaware law should apply.  Instead, Cryotech argues for California law while Technifab, an Indiana corporation, argues for Indiana law.  The Agreement lacks a choice-of-law provision.  As this action is here in federal court based on diversity jurisdiction, Technifab argues for the application of California's "governmental interest" choice-of-law test.  Under this approach, the court first considers if "the two states' laws actually differ; if so, [it] must examine each state's interest in applying its law to determine whether there is a 'true conflict'; and if each state has a legitimate interest [it] must compare the impairment to each jurisdiction under the other's rule of law."  *Arno v. Club Med., Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994).

Applying this test, Technifab argues that Indiana law should apply to Cryotech's second and fourth claims.  It asserts that California law "clearly and substantially differs" from Indiana law because (1) for count two Indiana requires an additional element (absence of any justification); and (2) for count four Indiana lacks anything comparable to California's broad unfair competition statute.  (Mot. 11.)  It also argues that there is a "true conflict" between these laws and that Indiana's interest "far outweighs" California's interests.  (Mot. 12.)  Finally, Technifab claims that Indiana's interests would be substantially impaired if California law were to apply because Cryotech's requested injunctive relief would affect negatively Technifab's ability to compete as an Indiana corporation.

Cryotech seems to agree to apply California's "governmental interest" choice-of-law test, but it comes up with a different result.  First, it claims that California and Indiana law are similar for both counts.  For count two, it asserts that Indiana's "absence of any justification" requirement "simply grafts California's general defense of justification into the elements of the Indiana law."

3

1  (Mot. 10.) As for count four, Cryotech argues that the absence of a statute in one state does not
2  automatically preclude application of the forum state's law—but that, in any case, its allegations fit
3  within Indiana common law. It submits that even if the states' laws were different, California has a
4  greater interest in applying its law in this dispute. (Opp'n 11.)

5  It is well established that a motion for summary judgment is not the place for a court to
6  weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249. Yet Technifab's motion
7  invites the court to do just that. To determine whether California or Indiana law applies to these
8  counts, this court would be required to "examine[] each jurisdiction's interest in the application of
9  its own law under the circumstances of the particular case to determine whether a true conflict
10 exists" and also to "evaluate[] and compare[] the nature and strength of the interest of each
11 jurisdiction in the application of its own law 'to determine which state's interest would be more
12 impaired if its policy were subordinated to the policy of the other state.' " *Kearney v. Salomon Smith*
13 *Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006) (quoting *Bernhard v. Harrah's Club*, 546 P.2d 719, 723
14 (Cal. 1976)). Such an evaluation requires the court to weigh the parties' disputed facts. Therefore,
15 Technifab has failed to meet its initial burden for summary judgment.

16 Although the court ultimately will make a determination as to choice of law, it is more
17 appropriate to do so at a time when it may weigh the appropriate evidence. (Indeed, at oral
18 argument, both sides agreed that in undertaking a choice-of-law analysis the court would necessarily
19 weigh the relevant facts.) The court does not find that waiting until a later date will prejudice either
20 party in their preparation for trial. Accordingly, the court DENIES Technifab's motion for
21 summary judgment as to choice of law.

22 *2.    Damages*

23 Technifab also moves for summary judgment concerning Cryotech's request for
24 compensatory damages. Technifab argues that "Cryotech's claimed compensatory damages are
25 utterly speculative" because, supposedly, Cryotech has not presented an appropriate damage
26 calculation or provided an expert to address damages. (Mot. 2.) As a result, it says, Cryotech
27 cannot prove that it has been harmed "with any degree of reasonable certainty" as required by
28 California law. (*Id.* at 2, 14–15.) Cryotech counters that it has provided its estimated damages

4

through its responses to interrogatories and deposition questions. It says that it has compiled hundreds of Technifab's invoices to show specific dollar amounts of lost revenues and lost profits.

Viewing the facts in the light most favorable to Cryotech, the court finds that Technifab has not met its initial burden for summary judgment. Despite what Cryotech may have presented thus far, Technifab points to no evidence that would make it impossible for Cryotech to prove its damages with reasonable certainty at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Expert testimony is not always necessary to establish damages; in the proper case, the court may rely on reasoned estimates. Technifab's argument really goes to the *weight* of the evidence. At this point, the court is not prepared to hold as a matter of law that Cryotech fails. As a result, the court DENIES Technifab's motion for summary judgment as to Cryotech's damages.

**C.     Cryotech's Motion (Docket No. 164)**

*1. Breach of Contract Claim and Counterclaim*

Cryotech moves for summary judgment on both its own breach of contract claim and Technifab's breach of contract counterclaim. In California, a party asserting a breach of contract claim must plead "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Acoustics, Inc. v. Trepte Constr. Co.*, 92 Cal. Rptr. 723, 740 (Ct. App. 1971).[2] In this case, the parties have accused each other of violating the Agreement; therefore, who breached the contract first may be dispositive of both claims.

Cryotech submits that there is no genuine dispute of material fact that Technifab first breached the Agreement. It claims that Technifab began breaching Section 1 of the Agreement as early as April 2005 when Technifab began selling "substantially similar" products in competition with Cryotech. It also asserts that Technifab breached Section 3 of the Agreement when Technifab failed to notify Cryotech that it modified Scheduled Products.

Technifab counters that the Agreement did not prevent it "from selling products in competition with Cryotech, as long as such products were not substantially similar to a Scheduled Product, in its current form." (Opp'n 3.) It notes that it could even sell Schedule 1-A products in

---

[2] The parties do not dispute that California law applies to their breach of contract claims.

competition with Cryotech if Cryotech was already obtaining a substantially similar product from someone else. To that end, Technifab claims that Cryotech purchased a manufacturing plant in May 2005 to make Scheduled Products or those substantially similar, and that this facility manufactured such products for Cryotech even before Cryotech acquired it. In addition, Technifab denies that the Agreement required it to inform Cryotech of developments to products it made for other customers.

To address Cryotech's assertion that Technifab breached Section 1 of the Agreement, the court turns to the language of the Agreement itself. For Schedule 1-A products, Section 1 of the Agreement states:

> [Technifab] agrees not to sell the Items listed in Schedule 1-A in their currently configured form or items that are *substantially similar* to these products to others, in competition with the business of [Cryotech] provided that [Cryotech] is not obtaining a *substantially similar* product from a source other than [Technifab]. [Technifab] reserves the right to continue unrestricted selling of products *substantially similar* to Statiflex without [Cryotech] style bayonets provided those sales are not to [Cryotech] customers.

(Compl. Ex. A. at 2 (emphasis added).)

As is readily apparent, whether Technifab breached Section 1 (or, for that matter, whether Cryotech breached Section 1) turns on the definition of "substantially similar." Yet this term is not defined anywhere in the Agreement. Nor did Cryotech submit any parole evidence as to the expressed intent at the time of contracting or any evidence how this term might be customarily understood in the cryogenics industry. Instead, all it provides is its own expert's interpretation. Without first deciding what "substantially similar" means, the court cannot possibly determine as a matter of law that Technifab breached Section 1 of the Agreement. And, whether a particular product at issue is "substantially similar" to a Scheduled Product is inherently a fact-intensive inquiry. As a result, Cryotech has failed to establish that there is no genuine issue of material fact that Technifab violated Section 1 of the Agreement.

The court reaches a similar conclusion concerning Technifab's alleged violation of Section 3 of the Agreement. Cryotech's argument focuses on Section 3(b), which reads: "[Technifab] agrees that it shall notify [Cryotech] promptly of any material modifications, revisions (to the extent such modification or revision changes the functionality of or adversely affects the quality of the Product) or discontinuances of a Product supplied by [Technifab] to [Cryotech]." (Compl. Ex. A. at 2.)  Just

6

as with Section 1, the parties have wildly different ideas of what products are included within the scope of Section 3. Yet even if they *did* so agree, Cryotech has not provided this court with uncontroverted evidence that there is no genuine dispute about what the individual terms within this section mean. For example, there are material disputed facts with respect to whether there were "material modifications" or whether any of them impacted "functionality" or "quality." Accordingly, the court DENIES Cryotech's motion for summary judgment as to both its own breach of contract claim and as to Technifab's breach of contract counterclaim.

   *2. Intentional Interference with Prospective Economic Advantage*

Finally, Cryotech moves for summary judgment on its claim for intentional interference with prospective economic advantage. Cryotech alleges that Technifab intentionally interfered with Cryotech's business relationship with Novellus. Cryotech claims that Technifab knew of this relationship but nevertheless acted to disrupt it, causing Cryotech economic harm. Citing California law,[3] Cryotech asserts that there is no genuine issue of material fact as to any of these factors.

In addition, Cryotech submits that there is no genuine dispute that Technifab "engaged in an independently wrongful act" as required by California law. *San Jose Const., Inc. v. S.B.C.C., Inc.*, 37 Cal. Rptr. 3d 54, 68 (Ct. App. 2007). Cryotech argues that Technifab acted wrongfully when it sold to Novellus products that were substantially similar to Scheduled Products and when it used its knowledge of Cryotech's pricing structure to bid against Cryotech for Novellus's business. Technifab counters that its sales to Novellus did not violate the Agreement because the products it sold to Novellus were not substantially similar to Scheduled Products, and that it was allowed to compete for customers after Cryotech—contrary to its contractual obligation—allegedly began outsourcing Scheduled Products.

Just as with the breach of contract claims, Cryotech has failed to show that there is no genuine dispute of material fact as to whether Technifab wrongfully interfered with its relationship with Novellus. First, as discussed above, Cryotech has failed to establish as a matter of law that Technifab breached the Agreement. Second, Cryotech did not submit any uncontradicted evidence

---

[3] As already discussed in this order concerning Technifab's motion for summary judgment, whether California law applies to this claim has not yet been established. For purposes of this motion, however, the court will address Cryotech's arguments as presented.

7

to support its allegation that Technifab was otherwise engaged in improper conduct.  Consequently, the court DENIES Cryotech's motion for summary judgment as to its second count.

**IT IS SO ORDERED.**

Dated: April 26, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C 08-02921 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Arthur J. Casey | ajc@robinsonwood.com, kkn@robinsonwood.com |
| David Richard Johanson | drj@esop-law.com, msshelli@esop-law.com |
| Douglas Andrew Rubel | dar@johansonberenson.com, msshelli@esop-law.com |
| Mark Douglas Hassler | hassler@huntlawfirm.net |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

United States District Court
For the Northern District of California